UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN E. CARTER, | ) | |
| # 97766, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:17-cv-01118 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| HERBERT SLATERY, III, | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M**

John E. Carter, an inmate of the SPR-Northeast Correctional Complex in Mountain City, Tennessee, filed this *pro se* action under 42 U.S.C. § 1983 Herbert Slatery, III in his official capacity as Attorney General of the State of Tennessee, seeking only a declaratory judgment that the Due Process Clause of the Fourteenth Amendment requires Tennessee state courts to reevaluate Carter's convictions for Tennessee Code Annotated § 39-2402 under a post-*State v. Brown*, 836 S.W.2d 530 (Tenn. 1992), interpretation of the elements of premeditation and deliberation. (Docket No. 1).

The plaintiff's complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A.

**I.   PLRA Screening Standard**

Under 28 U.S.C. § 1915A, even if the prisoner paid the civil filing fee (such as in this action), a district court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and shall dismiss any claims that are frivolous, malicious, or fail to state claims upon which relief may be granted.  Id.

The court must construe a *pro se* complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016)(citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's

factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007)(citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.  Section 1983 Standard

The plaintiff brings his complaint pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009)(quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III.  Background

In 1982, Carter was convicted of the first-degree murder of his grandparents under Tennessee Code Annotated § 39-2402, Tennessee's first-degree murder statute in effect at the time of the murders.[1] Carter admits that he took the lives of his grandparents, but he maintains that he did not act

---

[1] The Sixth Circuit Court of Appeals recited the underlying facts of Carter's convictions as follows:

> On June 28, 1981, John Henry Carter was found dead beside the steps of the front porch of his farm house in White County, Tennessee. The body of Carter's wife, Laura, was found in the house. The ensuing investigation resulted in the arrest of the dead couple's grandson, John E. Carter.
>
> John E. Carter visited his grandparents occasionally on their Tennessee farm, and they attempted to keep in touch with him because his father was dead. The Carters apparently had a fairly normal relationship with their grandson, although they did

2

with premeditation or deliberation to warrant a conviction for first-degree murder. Carter was sentenced to two consecutive terms of life imprisonment in 1983. Carter's convictions and sentence were upheld on direct appeal. *See State v. Carter*, 1985 Tenn. Crim. App. LEXIS 3028 (Tenn. Crim. App. Feb. 20, 1985), *perm. app. denied* (Tenn. July 2, 1990).

He filed a petition for post-conviction relief, which was denied after an evidentiary hearing, and dismissal was affirmed on appeal. *See Carter v. State*, No. 89–27–III, 1990 WL 9892 (Tenn. Crim. App. Feb. 9, 1990), *perm. app. denied* (Tenn. July 2, 1990).

In 1992, in *State v. Brown*, 836 S.W.2d 530, 543 (Tenn.1992), the Tennessee Supreme Court examined the first-degree murder statute and clarified the concepts of premeditation and deliberation. Thereafter, Carter instituted numerous proceedings in which he argued that he was entitled to relief based on *Brown*. *See Carter v. Carlton*, No. E2000–00406–CCA–R3–PC, 2001 WL 170878, at *3 (Tenn. Crim. App. Feb. 22, 2001) (affirming dismissal of his petition for habeas corpus relief, "we do not conclude that an individual convicted of first-degree murder pre-*Brown* is laboring under a void conviction"), *perm. app. denied* (Tenn. July 2, 2001), *reh'g denied* (Tenn. Sept. 17, 2001) *cert. denied* (U.S. Nov. 13, 2001); *Carter v. State*, No. M2003–00750–CCA–R28–CO (Tenn. Crim. App.

---

disapprove of his relationship with a married woman. Friction was created when young John, who did not hold a job, financed his relationship with his girlfriend by forging checks from his grandfather's bank account and stealing from his grandmother's purse.

When young John visited his grandparents on Saturday, June 27, 1981, they confronted him with a forged check for $1,500. After his grandparents went to bed for the evening, John attempted to kill them. He took a firewood log into their bedroom and beat them in the head until they were unconscious. Then, to mask his act, John went downstairs and ransacked the house to give it the appearance that it had been robbed. While John was ransacking the house, his grandfather regained consciousness and began to flee the house, but John found his grandfather's pistol and shot at him as he ran past. The elderly Carter made it to the front porch before John shot and killed him. Then, John went back into the house and shot his grandmother three times in the face.

*Carter v. Rone,* No. 93-5499, 1993 WL 498200, at *1 (M.D. Tenn. Dec. 2, 1993).

Jun. 9, 2003) (affirming dismissal of his fourth motion to reopen his petition for post-conviction relief, in which he claimed innocence based on *Brown* because the claim was not the type that could be raised in a motion to reopen), *perm. app. denied* (Tenn. Oct. 27, 2003); *Carter v. State*, No. E2005–01296–CCA–R3–HC, 2005 WL 2487977 (Tenn. Crim. App. Oct. 7, 2005) (construing his untitled pleading as one for habeas corpus relief and concluding that his claim of improper interpretation of law did not present a cognizable claim for habeas corpus relief), *perm. app. denied* (Tenn. Jan. 30, 2006), *cert. denied* (U.S. June 26, 2006); *Carter v. State*, No. M2004–03073–CCA–R3–CO, 2006 WL 119673 (Tenn. Crim. App. Jan. 17, 2006) (affirming summary dismissal of his three petitions for writ of error coram nobis as untimely and because the *Brown* issue was previously addressed in his post-conviction proceeding), *perm. app. denied* (Tenn. May 30, 2006), *cert. denied* (U.S. Oct. 2, 2006); *Carter v. Taylor*, No. E2014–01065–CCA–R3–HC, 2015 WL 2448029 (Tenn. Crim. App. May 22, 2015) (affirming dismissal of his petition for writ of habeas corpus for procedural deficiencies and because it failed to state a cognizable claim for habeas corpus relief), *perm. app. denied* (Tenn. Oct. 15, 2015). Indeed, as of 2005, the Tennessee Court of Criminal Appeals noted that Carter had "unsuccessfully challenged his convictions in 'at least eleven (11) separate proceedings' through the filings of petitions for habeas corpus, coram nobis, and/or post-conviction relief, including multiple motions to reopen his post-conviction petition, all raising variations of the claims he raises here." *Carter*, 2005 WL 2487977, at *1.

Carter also sought federal habeas corpus relief, contending that he was denied the effective assistance of counsel, his confession to the murders was admitted into evidence in violation of his constitutional rights, and insufficient evidence existed that he was sane. *Carter v. Rone*, No. 93-5499, 1993 WL 498200 (6th Cir. Dec. 2, 1993). The district court denied relief, and the Sixth Circuit Court of Appeals affirmed. *Id.* In 2005, Carter filed a motion pursuant to 28 U.S.C. § 2244 in the Sixth

Circuit, seeking authorization for the district court to consider a second petition for habeas corpus relief under 28 U.S.C. § 2254. *See In re John E. Carter*, No. 05-5315 (6th Cir. Oct. 26, 2005). In his motion, Carter asserted that his convictions were based on prior erroneous interpretations of state law by the Tennessee Supreme Court. He asserted that, in light of *Brown*, his convictions now violate the Due Process Clause. *Id.* at *1. The Sixth Circuit denied Carter's motion, holding that "Carter's request fails to satisfy the requirements of the statute." *Id.* at *2.

Prior to bringing the instant action, the plaintiff has filed two previous actions in this court under 42 U.S.C. § 1983. In the first action, *John E. Carter v. Leon C. Burns, Jr., et al.*, 3:07-cv-00597 (M.D. Tenn.), the plaintiff alleged that had been denied access to the courts because "Tennessee law closes all opportunity to judicial review and redress," his "continued incarceration as a factually innocent prisoner is not consistent with the prohibition against cruel and unusual punishment," and his convictions violate the Due Process Clause "because [his] conduct did not violate an element of § 39-2402 as properly interpreted." (00597, Docket No. 1). Carter argued that "the face of the record require[d] reversal of [his] convictions" in light of *Brown* because there is no evidence of the "deliberation" required to support his first-degree murder convictions. (*Id.*)

Carter challenged the constitutionality of Tennessee Code Annotated §§ 21-21-107, 40-26-105, 40-30-107, and 40-30-117, which govern collateral review of criminal convictions, and alleged that such statutes denied him "all opportunity for judicial review and redress of his later arising fully cognizable *Brown* based federal constitutional claims." (*Id.*) Carter sought only declaratory relief in the form of "a declaratory order that the State of Tennessee is constitutionally mandated to provide [him] an adequate corrective process for the hearing and the determination of" his constitutional claim based upon the *Brown* decision. (*Id.*)

The court dismissed Carter's complaint upon initial screening for lack of jurisdiction and

5

failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b) and subsequently denied reconsideration. (00597, Docket No. 3). On March 18, 2008, the Sixth Circuit Court of Appeals affirmed the district court's order in part, vacated the order in part, and remanded the case for further proceedings. (00597, Docket No. 12). Upon remand, a magistrate judge filed a report recommending the dismissal of Carter's complaint pursuant to the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) "for lack of standing/want of jurisdiction, and as both malicious and frivolous." (00597, Docket No. 17). Over Carter's objections, the district court modified, and then accepted and adopted, the magistrate judge's report and recommendation and dismissed the case. (00597, Docket No. 22).

Carter appealed, contending that the district court erroneously concluded that he lacked standing to pursue to instant complaint, his complaint was time-barred, he had no constitutional right to post-conviction relief, and his claims against the individually-named defendants were frivolous. (00597, Docket No. 28). The Sixth Circuit Court of Appeals affirmed the district court in all respects, having "considered all of the arguments raised by Carter in his appellate brief and conclud[ing] that they lack merit." (00597, Docket No. 33 at 3).

In April 2016, Carter filed a second federal civil rights complaint in this court, *John E. Carter v. Tre Hargett, et al.*, No. 3:16-cv-00730 (M.D. Tenn), concerning an action Carter filed in state court. The Tennessee Court of Criminal Appeals denied his state action in February 2016, and he filed an application for permission to appeal in the Tennessee Supreme Court on or about April 11, 2016. In his federal complaint, Carter alleged that his application for permission to appeal could not "receive fair, impartial, unbiased consideration by the justices of the Tennessee Supreme Court" because the state has a system of retention elections for justices and granting relief to a convicted murderer would anger the voters and endanger the Justice's chances of re-election. (00730, Docket

No. 1). In particular, Carter alleged that the election system of judges in Tennessee violates his right to due process and sought declaratory, injunctive, and monetary relief. (*Id.*)

The district court screened the complaint pursuant to 28 U.S.C. § 1915(e)(2) and determined that the complaint failed to state a claim for which relief could be granted. (00730, Docket No. 5). The district court explained that, although the complaint was well-researched, the Supreme Court of the United States has explicitly stated that judicial election schemes are not inconsistent with the Due Process Clause, despite their inherent political pressure. (*Id.*) Because Carter's claim was foreclosed by Supreme Court precedent, and because Carter did not assert any personal bias or injury against him by the Tennessee judiciary, the district court dismissed the complaint. (*Id.*) Carter appealed (00730, Docket No. 16), and the Sixth Circuit affirmed (00730, Docket No. 28).

Most recently, in 2014 Carter instituted a lawsuit in the chancery court of Davidson County by filing a petition for declaratory judgment. *Carter v. Slatery*, No. M2015-00554-COA-R3-CV, 2016 WL 1268110 (Tenn. Ct. App. Feb. 19, 2016), *perm. app. denied* (Tenn. Feb. 19, 2016). He asked the chancery court to declare that he has a federal due process right to have his 1982 first-degree murder convictions "tested" against the Tennessee Supreme Court's subsequent interpretation of Tennessee's statute defining first-degree murder. *Id.* at *1. He also sought a declaration that he had been denied due process by application of the various criminal statutes that were cited in his previous cases to support dismissal of his petitions for post-conviction, habeas corpus, and coram nobis relief. *Id.* The attorney general, as respondent, moved to dismiss the action for lack of subject matter jurisdiction. *Id.* The chancery court concluded that it possessed subject matter jurisdiction to issue a declaratory judgment as to the plaintiff's issues, but nevertheless dismissed the petition *sua sponte* on the basis of collateral estoppel. *Id.*

Carter appealed, and the Tennessee Court of Appeals concluded that the chancery court lacked

subject matter jurisdiction to enter a declaratory judgment regarding the legality or constitutionality of the criminal judgments entered against Carter. *Id.* at *7 The Court of Appeals affirmed, as modified, the trial court's order dismissing the petition, finding that Carter was not entitled to bring a declaratory judgment action in chancery court to determine whether he is entitled to a post-conviction remedy pursuant to *Fiore v. White*, 531 U.S. 225 (2001),[2] as Carter claims. *Id.*

In his current complaint before the court (Docket No. 6), Carter names the Tennessee Attorney General as the respondent. Based on *Fiore*, Carter contends that he has a due process right to have state law as interpreted in *Brown* applied to his convictions. According to Carter, *Fiore* and the Due Process Clause require a post-conviction remedy by which he can have his convictions "retested" against *Brown*. He seeks a declaratory judgment stating that the Due Process Clause of the Fourteenth Amendment requires that Carter's pre-*Brown* final convictions for Tennessee Code Annotated § 39-2402 be reevaluated under a proper *Brown* interpretation of the elements of premeditation and deliberation. Carter also alleges that he was denied his federal due process right to fundamental fairness in the process by which the state of Tennessee denied his state law claims.

## IV. PLRA Screening

The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claims arises." *Eidson v. Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir. 2007). The limitations period for § 1983

---

[2] In *Fiore*, the Supreme Court held that a state cannot, consistently with the Due Process Clause, convict a defendant for conduct that its criminal statute, as properly interpreted, does not prohibit. 531 U.S. 225, 226. Fiore was convicted of violating a Pennsylvania statute prohibiting the operation of a hazardous waste facility without a permit. *See id.* After Fiore's conviction became final, the Pennsylvania Supreme Court interpreted the statute for the first time, making it clear that Fiore's conduct was not within its scope. *Id.* However, the Pennsylvania courts refused to grant Fiore collateral relief. *Id.* The Supreme Court granted certiorari in part "to decide when, or whether, the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on collateral review." *Id.* Reversing the United States Court of Appeals for the Third Circuit, the Supreme Court found that Fiore's conviction was not consistent with the demands of the Due Process Clause. *Id.*

actions arising in Tennessee is the one-year limitations provisions found in Tennessee Code Annotated § 28-3-104(a). *Porter v. Brown,* 289 Fed. Appx. 114, 116 (6th Cir. 2008). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007). Claims accrue and the statute of limitations period begins to run when the plaintiff knows or has reason "to know of the injury which is the basis of his action." *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005). This inquiry is objective, and courts look "to what event should have alerted the typical layperson to protect his or her rights." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000). It is the Court's responsibility to "determine whether the alleged precipitating event or events occurred more than a year before [the plaintiff] filed the complaint. . . ." *Standridge v. Tenn. Dep't of Children's Servs.*, No. 3:08–CV–133, 2009 WL 348782, at *7 (E.D. Tenn. Feb. 10, 2009).

In the first § 1983 action filed by Carter in this court,[3] the magistrate judge entered a report recommending that Carter's § 1983 claims be dismissed as frivolous for having been filed beyond the one-year statute of limitations period. (00597, Docket No. 17 at 8-10). The magistrate judge determined that the plaintiff's § 1983 claims accrued on the date the plaintiff filed an "Untitled Motion/Petition" in the White County Criminal Court in which the plaintiff asserted the following claim for relief:

> If Tennessee law does not provide an adequate corrective process . . . [then] Petitioner presents this "Untitled Motion/Petition" as an independent action asserting the denial of his federal constitutional guarantees. U.S. Const. Amend. 5, 6, 8 & 14; U.S. Const. Art. I, § 9, cl. 2.

(00597, Docket No. 1 at 13 ¶ 2). The magistrate judge found that it was "clear from the statement

---

[3]On initial review, the court dismissed Carter's second § 1983 complaint for failure to state claims upon which relief may be granted. The court did not evaluate the timeliness of Carter's claims. (00730, Docket No. 5).

above that the plaintiff was aware of the federal dimension of the claim presently pending before the district court at the time he filed the motion in the White County Criminal Court." (00597, Docket No. 17 at 9). And, because the plaintiff filed his motion no later than December 6, 2004, and filed his § 1983 action on May 19, 2007, the magistrate judge determined that the plaintiff brought the action nearly one and one-half years after the one-year statute of limitation had run. (00597, Docket No. 17 at 9-10). The magistrate judge further found that Carter had not asserted that the statute of limitations should be tolled in that case "for reasons of equity, or otherwise" and concluded that equitable tolling was not warranted. (00597, Docket No. 17 at 10).

In affirming the magistrate judge's report and recommendation as modified, the court found that the magistrate judge did not err in recommending that the complaint be dismissed as frivolous because it was brought beyond the statute of limitations, nor did the magistrate judge err in concluding that equitable tolling should not be applied. (00597, Docket No. 22 at 3). The district court specifically noted: "The plaintiff's efforts to show that his complaint was timely based on the *Younger* abstention doctrine, the alleged need to exhaust his *Brown* claim in state court, and the continuing violation doctrine are unavailing." (*Id.*)

On appeal, the Sixth Circuit affirmed, finding that "[t]he district court properly dismissed Carter's complaint as without merit, and in any event untimely. Because these reasons why Carter's complaint was subject to dismissal have been fully explained by the district court, the issuance of a detailed opinion by this court would be duplicative and would serve no useful purpose." (00597, Docket No. 33 at 3). The Sixth Circuit further stated: "We have considered all of the arguments raised by Carter in his appellate brief and conclude that they lack merit." (*Id.*)

Like his first federal civil rights action (*Carter v. Burns,* 3:07-cv-00597 (M.D. Tenn.)("*Burns*")), Carter's instant federal civil rights action seeks relief under the Due Process

10

Clause. Under *Roberson,* 399 F.3d at 794, Carter's federal due process claims accrued on the date on which he became aware of his injuries and the acts providing the basis for his claims. In *Burns*, the court determined that the accrual date for Carter's federal due process claims was the date on which the plaintiff filed his "Untitled Motion/Petition" in the White County Criminal Court. When conducting his statute of limitations analysis of the plaintiff's claims, the magistrate judge in *Burns* noted that it was unclear from the record whether Carter filed his motion on July 23, 2002, March 1, 2004, or December 6, 2004. The magistrate judge gave the plaintiff the benefit of the doubt that he filed the motion as late as December 6, 2004, and, even applying the later date, the magistrate judge found that the plaintiff's complaint was filed beyond the governing one-year statute of limitations. (00597, Docket No. 17 at 9).

In the plaintiff's objections to the magistrate judge's report and recommendation, the plaintiff noted "[t]here is some confusion as to when Plaintiff filed" the motion at issue and clarified that he filed the motion on April 7, 2005.[4] (00597, Docket No. 20 at 14)(citing Docket No. 1 at 12-13 ¶ 28). Carter objected to the magistrate judge's recommendation to dismiss his complaint as untimely filed, arguing that the *Younger* abstention doctrine and Carter's need to exhaust his *Brown* claim in state court prevented him from filing his complaint any sooner and, in any event, his "complaint was timely filed under the 'continuing violation' doctrine." (00597, Docket No. 20 at 18). The district court rejected the plaintiff's arguments (00597, Docket No. 22), as did the Sixth Circuit (00597, Docket No. 33).

Although Carter does not explicitly concede that he filed the instant complaint beyond the

---

[4] Had the court applied the April 7, 2005 date, however, the plaintiff's complaint still would have been untimely filed because the plaintiff filed his § 1983 complaint on May 19, 2007; more than one year elapsed between April 7, 2005, and May 19, 2007. *See Eidson*, 510 F.3d at 634.

11

applicable one-year statute of limitations, Carter "offers two ways [in which] his complaint is timely" (Docket No. 6 at 56), both of which rely on some version of the continuing violation doctrine. "Th[e Sixth] Circuit employs the continuing violations doctrine most commonly in Title VII cases," but the precedents of the Circuit do provide that the doctrine may, in "rare [cases] extend[ ] . . . to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (citation omitted). Courts use the following test to determine whether such a theory is appropriate: "First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern . . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[ ] must have been avoidable if the defendants had at any time ceased their wrongful conduct." *Eidson*, 510 F.3d at 635 (quoting *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)). "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert*, 172 F.3d at 940 (quoting *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)). Passive inaction by the alleged wrongdoer does not support a continuing violation. *Id.* The Sixth Circuit recognizes two categories of continuing violations. First, the plaintiff can show prior wrongful activity that continues into the present, or second, the plaintiff can show a longstanding and demonstrable policy of discrimination. *Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 646 F.3d 360, 366 (6th Cir. 2011), *cert. denied*, 565 U.S. 1060 (2011).

Carter alleges that the court should consider the denial of four separate petitions he filed in state courts seeking to have his convictions reevaluated under *Brown* as "discrete and separate acts" of the violations of Carter's federal civil rights, the latest of which was August 18, 2016. (Docket No. 6 at 56-57). Because Carter filed the instant federal civil rights complaint on November 7, 2017, he reasons that his complaint was filed within one year of August 18, 2016 (the latest of the four "discrete

and separate acts"), and is therefore timely. However, Carter's position, which is unsupported by citations to any legal authority, cannot prevail. If the court allowed a plaintiff to effectively reset the accrual date for § 1983 statute of limitations purposes each time he or she filed a new motion or petition, the purpose of having a statute of limitations would be negated.

However, Carter alternatively alleges that, under the continuing violation doctrine,

> each day the State of Tennessee fails-to-act and refuses to reevaluate Carter's final convictions, or provide a process in which Carter's final convictions will be reevaluated, represents a new separate and distinct constitutional injury to Carter, another day Carter stands convicted and incarcerated when his § 39-2404 convictions and continued incarceration are inconsistent with the demands of the Federal Due Process Clause; and had the State, at any time, simply reevaluated Carter's convictions–through whatever process is constitutionally due– Carter's constitutional injury would have ceased.

(Docket No. 6 at 58). Carter frames this theory as a "discrete and separate injuries" theory. (*Id.* at 57).

Regardless of how Carters frames his theories, the court already has traveled this road. The doctrine of *res judicata* encompasses both claim preclusion and issue preclusion. *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77, 104 S. Ct. 892, 79 L.Ed.2d 56 n.1 (1984); *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 528 n.5 (6th Cir. 2006). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* In contrast, "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.*

"Issue preclusion bars relitigation of an issue when: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits;

and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding." *Gen. Elect. Med. Sys. Europe v. Prometheus Health*, 394 Fed. Appx. 280, 283 (6th Cir. 2010) (citation omitted).

Carter is barred under the doctrine of issue preclusion from relitigating the court's statute of limitations determination and the applicability of the continuing violation doctrine to his § 1983 claims. First, the precise issue now raised, *i.e.*, untimely filed § 1983 claims, was raised and litigated in a prior action; the court already has considered whether the continuing violation doctrine saves the plaintiff's untimely filed causes of action under § 1983, and the court determined that the plaintiff's continuing violation arguments were "unavailing." (00597, Docket No. 22 at 3). That determination, which was upheld by the Sixth Circuit, is conclusive in this subsequent suit based on a different cause of action under § 1983. The issue cannot be relitigated by the plaintiff in this or any other action in federal court. Any argument by the plaintiff that he discovered new precedent which he did not previously call to the court's attention is unavailing.

Second, the court's determinations that the action was untimely filed and that the continuing violation doctrine did not apply were clearly necessary to the outcome of the prior proceeding.

Third, this court's decision to dismiss the plaintiff's claims in the previous case based in part on the statute of limitations bar was a final judgment on the merits. The judgment is binding on the plaintiff.

Fourth, even though the plaintiff has proceeded *pro se* in both actions, there is no evidence that he was deprived of an opportunity to fully and fairly litigate his case. He filed thirty-four pages of objections to the magistrate's report recommending that his action be dismissed for reasons including untimely filing. (00597, Docket No. 20). He also argued his position to the Sixth Circuit Court of Appeals. Although the plaintiff maintains that he has not been provided with an opportunity for

Tennessee state courts to reexamine his conviction after *Brown*, the plaintiff makes no suggestion that he did not have a full and fair opportunity to litigate the statute of limitations issue in the prior proceeding before this court. Consequently, the court concludes that a second review of the timeliness of the plaintiff's § 1983 claims and the applicability of the continuing violations doctrine to those untimely filed claims is barred under the doctrine of issue preclusion.

**V.     Conclusion**

For the reasons explained herein, the court finds that the plaintiff's complaint fails the PLRA initial screening. 28 U.S.C. § 1915A. The plaintiff's § 1983 claims were untimely filed, and a determination of the applicability of the continuing violations doctrine already has been undertaken by the court in a prior § 1983 case filed by the plaintiff. The instant claims are by the doctrine of issue preclusion. Accordingly, this action will be dismissed.

An appropriate order will be entered.

ENTER this 24th day of May 2018.

_____
Aleta A. Trauger
United States District Judge