UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| JOHN E. CARTER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 3:17-cv-01118 |
| v. | ) | Judge Trauger |
| | ) | |
| HERBERT SLATERY, III., | ) | |
| | ) | |
| Defendant. | ) | |

# **M E M O R A N D U M**

Pending before the court are the following motions by the plaintiff: a motion for reconsideration, new trial, to alter or amend judgment, or for relief from judgment or order (Docket No. 11);[1] a motion to appoint counsel (Docket No. 12); and an application to proceed in forma pauperis (Docket No. 13).

## I. Background

In 1982, plaintiff John E. Carter was convicted of the first-degree murder of his grandparents under Tennessee Code Annotated § 39-2402, Tennessee's first-degree murder statute in effect at the time of the murders. Carter admits that he took the lives of his grandparents, but he maintains that he did not act with premeditation or deliberation to warrant a conviction for first-degree murder. Carter was sentenced to two consecutive terms of life imprisonment in 1983. Carter's convictions and sentence were upheld on direct appeal. *See State v. Carter*, 1985 Tenn. Crim. App. LEXIS 3028 (Tenn. Crim. App. Feb. 20, 1985), *perm. app. denied* (Tenn. July 2, 1990).

---

[1] Citations to the docket in the instant case are indicated as: (Docket No. __). Citations to the docket in the plaintiff's other cases are indicated as: (Last 5 digits of case number, Docket No. __).

He filed a petition for post-conviction relief, which was denied after an evidentiary hearing, and dismissal was affirmed on appeal. *See Carter v. State*, No. 89–27–III, 1990 WL 9892 (Tenn. Crim. App. Feb. 9, 1990), *perm. app. denied* (Tenn. July 2, 1990).

### A. State court filings after *State v. Brown*

In 1992, in *State v. Brown*, 836 S.W.2d 530, 543 (Tenn.1992) ("*Brown*"), the Tennessee Supreme Court examined the first-degree murder statute and clarified the concepts of premeditation and deliberation. Thereafter, Carter instituted numerous proceedings in which he argued that he was entitled to relief based on *Brown*. *See Carter v. Carlton*, No. E2000–00406–CCA–R3–PC, 2001 WL 170878, at *3 (Tenn. Crim. App. Feb. 22, 2001) (affirming dismissal of his petition for habeas corpus relief, "we do not conclude that an individual convicted of first-degree murder pre-*Brown* is laboring under a void conviction"), *perm. app. denied* (Tenn. July 2, 2001), *reh'g denied* (Tenn. Sept. 17, 2001) *cert. denied* (U.S. Nov. 13, 2001); *Carter v. State*, No. M2003–00750–CCA–R28–CO (Tenn. Crim. App. Jun. 9, 2003) (affirming dismissal of his fourth motion to reopen his petition for post-conviction relief, in which he claimed innocence based on *Brown* because the claim was not the type that could be raised in a motion to reopen), *perm. app. denied* (Tenn. Oct. 27, 2003); *Carter v. State*, No. E2005–01296–CCA–R3–HC, 2005 WL 2487977 (Tenn. Crim. App. Oct. 7, 2005) (construing his untitled pleading as one for habeas corpus relief and concluding that his claim of improper interpretation of law did not present a cognizable claim for habeas corpus relief), *perm. app. denied* (Tenn. Jan. 30, 2006), *cert. denied* (U.S. June 26, 2006); *Carter v. State*, No. M2004–03073–CCA–R3–CO, 2006 WL 119673 (Tenn. Crim. App. Jan. 17, 2006) (affirming summary dismissal of his three petitions for writ of error coram nobis as untimely and because the *Brown* issue was previously addressed in his post-conviction proceeding), *perm. app. denied* (Tenn. May 30, 2006), *cert. denied* (U.S. Oct. 2,

2006); *Carter v. Taylor*, No. E2014–01065–CCA–R3–HC, 2015 WL 2448029 (Tenn. Crim. App. May 22, 2015) (affirming dismissal of his petition for writ of habeas corpus for procedural deficiencies and because it failed to state a cognizable claim for habeas corpus relief), *perm. app. denied* (Tenn. Oct. 15, 2015). Indeed, as of 2005, the Tennessee Court of Criminal Appeals noted that Carter had "unsuccessfully challenged his convictions in 'at least eleven (11) separate proceedings' through the filing of petitions for habeas corpus, coram nobis, and/or post-conviction relief, including multiple motions to reopen his post-conviction petition, all raising variations of the claims he raises here." *Carter*, 2005 WL 2487977, at *1.

In 2014 Carter instituted a lawsuit in the Chancery Court of Davidson County by filing a petition for declaratory judgment. *Carter v. Slatery*, No. M2015-00554-COA-R3-CV, 2016 WL 1268110 (Tenn. Ct. App. Feb. 19, 2016), *perm. app. denied* (Tenn. Feb. 19, 2016). He asked the Chancery Court to declare that he has a federal due process right to have his 1982 first-degree murder convictions "tested" against the Tennessee Supreme Court's subsequent interpretation of Tennessee's statute defining first-degree murder. *Id*. at *1. He also sought a declaration that he had been denied due process by application of the various criminal statutes that were cited in his previous cases to support dismissal of his petitions for post-conviction, habeas corpus, and coram nobis relief. *Id*. The Attorney General, as respondent, moved to dismiss the action for lack of subject matter jurisdiction. *Id*. The Chancery Court concluded that it possessed subject matter jurisdiction to issue a declaratory judgment as to the plaintiff's issues, but nevertheless dismissed the petition *sua sponte* on the basis of collateral estoppel. *Id*.

Carter appealed, and the Tennessee Court of Appeals concluded that the Chancery Court lacked subject matter jurisdiction to enter a declaratory judgment regarding the legality or constitutionality of the criminal judgments entered against Carter. *Id*. at *7 The Court of

Appeals affirmed, as modified, the trial court's order dismissing the petition, finding that Carter was not entitled to bring a declaratory judgment action in Chancery Court to determine whether he is entitled to a post-conviction remedy pursuant to *Fiore v. White*, 531 U.S. 225 (2001). *Id.*

### B. Federal filings

#### 1. Habeas

Carter also sought federal habeas corpus relief, contending that he was denied the effective assistance of counsel, his confession to the murders was admitted into evidence in violation of his constitutional rights, and insufficient evidence existed that he was sane. *Carter v. Rone,* No. 93-5499, 1993 WL 498200 (6th Cir. Dec. 2, 1993). The district court denied relief, and the Sixth Circuit Court of Appeals affirmed. *Id.*

In 2005, Carter filed a motion pursuant to 28 U.S.C. § 2254 in the Sixth Circuit, seeking authorization for the district court to consider a second petition for habeas corpus relief under 28 U.S.C. § 2254. *See In re John E. Carter*, No. 05-5315 (6th Cir. Oct. 26, 2005). In his motion, Carter asserted that his convictions were based on prior erroneous interpretations of state law by the Tennessee Supreme Court. He asserted that, in light of *Brown*, his convictions violate the Due Process Clause. *Id.* at *1. The Sixth Circuit denied Carter's motion, holding that "Carter's request fails to satisfy the requirements of the statute." *Id.* at *2.

#### 2. Section 1983

Prior to bringing the instant action, the plaintiff has filed two previous actions in this court under 42 U.S.C. § 1983.

##### a. *Burns* action

In the first action, *John E. Carter v. Leon C. Burns, Jr., et al.*, 3:07-cv-00597 (M.D. Tenn.) ("*Burns*"), Carter challenged the constitutionality of Tennessee Code Annotated §§ 21-

4

21-107, 40-26-105, 40-30-107, and 40-30-117, which govern collateral review of criminal convictions, and alleged that such statutes denied him "all opportunity for judicial review and redress of his later arising fully cognizable *Brown* based federal constitutional claims." (00597, Docket No. 1 at 6). Carter sought only declaratory relief in the form of "a declaratory order that the State of Tennessee is constitutionally mandated to provide [him] an adequate corrective process for the hearing and the determination of" his constitutional claim based upon the Brown decision. (*Id.*)

The court dismissed Carter's *Burns* complaint upon initial screening for lack of jurisdiction[2] and failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b) (00597, Docket No. 3)[3] and subsequently denied reconsideration (Docket No. 6). On March 18, 2008, the Sixth Circuit Court of Appeals affirmed the district court's order in part, vacated the order in part, and remanded the case for further proceedings. (00597, Docket No. 12). In particular, the Sixth Circuit affirmed the court's dismissal of Carter's as-applied challenge to the constitutionality of the Tennessee collateral review statutes as barred by the *Rooker-Feldman* doctrine but found that the court erred in summarily dismissing Carter's facial challenge to the Tennessee statutes. (*Id.* at 3). On remand, the Sixth Circuit instructed the court to consider the plaintiff's facial challenges to the constitutionality of Tennessee statutes pertaining to post-conviction and collateral review. (*Id.* at 2-3).

Upon remand, the magistrate judge filed a report recommending the dismissal of Carter's facial challenges pursuant to the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) "for lack of standing/want of jurisdiction, and as both malicious and frivolous." (00597, Docket No.

---

[2] The court found that "the upshot of the plaintiff's demand for relief is that he wants this court to overrule the state courts' determination that he is not entitled to have his conviction reviewed under *Brown*. More particularly, the plaintiff asks this court to serve as an appellate court." (00597, Docket No. 3 at 3).
[3] It appears that the magistrate judge intended his merits review to be an alternative holding, given that he recommended the dismissal of the action based on a lack of jurisdiction.

5

17).  More specifically, the magistrate judge found that Carter lacked standing to challenge the statutes at issue because his claim had been addressed on collateral review; even if Carter had standing, he filed his § 1983 claims too late; Carter's claim that Tennessee's statutes governing post-conviction/collateral review violate his constitutional rights is frivolous because Carter has no constitutional right to challenge his convictions under *Brown* in a state post-conviction/collateral review proceeding; and Carter's claims against the state court judges lack an arguable basis in fact and in law.  (*Id*. at 5-13).   Over Carter's objections, the district court modified, and then accepted and adopted, the magistrate judge's report and recommendation and dismissed the case with prejudice.  (00597, Docket No. 22).

Carter appealed, contending that the district court erroneously concluded that he lacked standing to pursue the instant complaint, his complaint was time-barred, he had no constitutional right to post-conviction relief, and his claims against the individually-named defendants were frivolous. (00597, Docket No. 28).  The Sixth Circuit Court of Appeals affirmed the district court in all respects, having "considered all of the arguments raised by Carter in his appellate brief and conclud[ing] that they lack merit."  (00597, Docket No. 33 at 3).

### 2. *Hargett* action

In April 2016, Carter filed a second federal civil rights complaint in this court, *John E. Carter v. Tre Hargett, et al.*, No. 3:16-cv-00730 (M.D. Tenn), concerning an action Carter filed in state court.  The Tennessee Court of Criminal Appeals denied his state action in February 2016, and he filed an application for permission to appeal in the Tennessee Supreme Court on or about April 11, 2016.  In his federal complaint, Carter alleged that his application for permission to appeal could not "receive fair, impartial, unbiased consideration by the justices of the Tennessee Supreme Court" because the state has a system of retention elections for justices and

granting relief to a convicted murderer would anger the voters and endanger the Justice's chances of re-election." (00730, Docket No. 1). In particular, Carter alleged that the election system of judges in Tennessee violates his right to due process and sought declaratory, injunctive, and monetary relief. (*Id.*)

The district court screened the complaint pursuant to 28 U.S.C. § 1915(e)(2) and determined that the complaint failed to state a claim for which relief could be granted. (00730, Docket No. 5). The district court explained that, although the complaint was well-researched, the Supreme Court of the United States has explicitly stated that judicial election schemes are not inconsistent with the Due Process Clause, despite their inherent political pressure. (*Id.*) Because Carter's claim was foreclosed by Supreme Court precedent, and because Carter did not assert any personal bias or injury against him by the Tennessee judiciary, the district court dismissed the complaint. (*Id.*) Carter appealed (00730, Docket No. 16), and the Sixth Circuit affirmed (00730, Docket No. 28).

### 3. Instant action

On July 31, 2017, Carter, now an inmate of the SPR-Northeast Correctional Complex in Mountain City, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against Herbert Slatery, III in his official capacity as Attorney General of the State of Tennessee. (Docket No. 1 at 61). Based on *Fiore*, the plaintiff contends that he has a federal due process right to have state law as interpreted in *Brown* applied to his convictions. According to the plaintiff, *Fiore* and the Due Process Clause require a post-conviction remedy by which he can have his convictions "retested" against *Brown*. He seeks a declaratory judgment stating that the Due Process Clause of the Fourteenth Amendment requires that Carter's pre-*Brown* final convictions of Tennessee Code Annotated 39-2402 be reevaluated under a proper *Brown* interpretation of the elements of

7

premeditation and deliberation. The plaintiff also alleges that he was denied his federal due process right to fundamental fairness in the process by which the State of Tennessee denied his state law claims.

By order and accompanying memorandum entered on May 24, 2018, the court found that the plaintiff's instant §1983 claims were untimely filed. (Docket Nos. 9 at 11). The court determined that Carter was barred under the doctrine of issue preclusion from relitigating the court's statute of limitations determination and the applicability of the continuing violation doctrine to his § 1983 claims. (Docket No. 9 at 14-15). The court therefore dismissed this action. (Docket Nos. 9 and 10).

The plaintiff now asks the court to reconsider its decision to dismiss his claims as time-barred, grant a new trial, alter or amend the judgment, or grant relief from the judgment under Rule 59 or 60 of the Federal Rules of Civil Procedure. (Docket No. 11).

**II.    Analysis**

Because there is no federal procedural rule permitting a "motion for reconsideration," the court first considers the plaintiff's motion (Docket No. 11) as a motion to alter or amend judgment under Rule 59(e), Fed. R. Civ. P. Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1999). The movant may not use Rule 59 to re-argue the case or to present evidence that should have been before the court at the time judgment entered. *See Roger Miller Music, Inc., v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (collecting cases).

Rule 59 motions must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). Here, the plaintiff's motion was filed within 28 days after entry of judgment; thus, the motion is timely under Rule 59. (*See* Docket No. 11 at 32).

In his Rule 59 motion to alter or amend the court's dismissal of § 1983 action, the plaintiff does not assert that there is newly discovered evidence or an intervening change in controlling law. Instead, he contends that the court erred in dismissing this action. Specifically, the plaintiff contends that his instant §1983 claims were timely filed within one year of the Tennessee Supreme Court's denying him permission to appeal the dismissal of his petition for declaratory judgment on February 19, 2016 (*Id*. at 14-16, 23); that the §1983 claims he asserts in the instant action are different claims than the ones he asserted in his prior federal action; therefore, even if his claims were untimely filed, issue preclusion does not apply to bar the court from considering the plaintiff's continuing violation theory (*Id*. at 13); and that, in any event, "the court's application of issue preclusion . . . is fundamentally flawed, ignores and/or misapplies the requirements of the collateral estoppel/issue preclusion doctrine, and denies Carter's access to the courts as guaranteed by the Due Process Clause of the Fourteenth Amendment." (*Id*. at 2).

The court has carefully reviewed the plaintiff's motion to reconsider and the court's previous rulings in this case. The court is not persuaded that its prior decision—that the plaintiff's § 1983 claims were untimely filed—is erroneous. However, the court is persuaded that the plaintiff is entitled to the court's analysis of whether his untimely filed § 1983 claims are saved by the continuing violation doctrine. Therefore, the plaintiff's Rule 59 motion (Doc. No. 11) will be granted, insofar as the court will alter or amend its judgment to conduct a new statute of limitations analysis of the plaintiff's instant § 1983 claims.

Section 1983 claims accrue and the statute of limitations period begins to run when the plaintiff knows or has reason "to know of the injury which is the basis of his action." *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005). This inquiry is objective, and courts look "to what event should have alerted the typical layperson to protect his or her rights." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000). Generally speaking, "[i]n procedural-due-process claims . . . , a plaintiff's injury accrues at the time that process was denied because 'the allegedly infirm process is an injury in itself.'" *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016) (quoting *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991)). "In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1984); *see Gibbs v. Hopkins*, 10 F.3d 373, 377 (6th Cir. 1993). The plaintiff would know of the injury which is the basis of his due process claim when he learns that the state corrective procedure affords him no relief.

Arguably, the plaintiff was aware that the state court process afforded him no relief when, on July 2, 2001, the Tennessee Court of Criminal Appeals declined to grant him permission to appeal the dismissal of his petition for habeas corpus relief, in which he argued, among other things, that he was entitled to relief under *Brown* or, slightly later, on September 17, 2001, when the Tennessee Court of Criminal Appeals denied the plaintiff's request for rehearing in the same case. In affirming the denial of the plaintiff's petition, the Tennessee Court of Criminal Appeals explained:

> This leads us to the third component of Carter's notice issue, that the caselaw lacked clear definitions of premeditation and deliberation. It is true, as the petitioner alleges, that historically the caselaw has not been uniform in its treatment of the definitions of premeditation and deliberation. *See, e.g., State v. Brown*, 836 S.W.2d 530, 540-43 (Tenn.1992) (discussing various approaches

10

> to analysis of premeditation and deliberation). Although the supreme court has since addressed the ambiguity by clarifying the distinction between the two elements, *see generally id.* at 543, we have held time and again that the former ambiguity failed to rise to the level of depriving defendants of their constitutional rights. *See, e.g., Lofton v. State*, 898 S.W.2d 246, 249-50 (Tenn. Crim. App.1994); *State v. Ray*, 880 S.W.2d 700, 707 (Tenn. Crim. App.1993). In fact, we have consistently held just the opposite. *See, e.g., Lofton*, 898 S.W.2d at 249-50; *Ray*, 880 S.W.2d at 707. Without some indication that any ambiguous judicial interpretations of the terms premeditation and deliberation were so serious as to implicate constitutional concerns, we do not conclude that an individual convicted of first degree murder pre-*Brown* is laboring under a void conviction.

*Carter*, 2001 WL 170878, at * 3. The appellate court's rejection of the plaintiff's *Brown*-based argument was not based, however, on an analysis and conclusion of whether *Fiore* requires that the State, under *Brown*, reexamine the plaintiff's convictions. Indeed, at that time *Fiore* had not yet been decided by the Supreme Court.

In his "Untitled Motion/Petition" filed in Johnson County Circuit Court, the plaintiff asserted that his murder convictions were obtained in violation of his constitutional rights to due process. *See Carter v. State*, No. E2005-01296-CCA-R3-HC, 2005 WL 2487977, at *1 (Tenn. Crim. App. Jan. 30, 2006). In particular, he argued that his convictions were based on improper interpretations of state law under which the elements of premeditation and deliberation were improperly commingled and which prevented him from presenting a defense of diminished capacity at trial. *See id.* He asserted that these areas of the law were subsequently clarified by later decisions of our Supreme Court and that he was thus entitled to an "adequate corrective process" to present his claims before this court or to have his judgments vacated and the case remanded for a new trial—arguments very similar, if not identical, to the claims he raises in the instant § 1983 action. *See id.* The trial court construed his pleading as a petition for writ of habeas corpus and found that the petition failed to comply with the mandatory statutory

requirements applicable to habeas corpus proceedings and therefore failed to state a cognizable claim for relief. *See id*. On appeal, the Tennessee Court of Criminal Appeals affirmed, elaborating as follows:

> Before this court, the petitioner first takes issue with the trial court's treatment of his petition as one for habeas corpus relief, asserting that he was thereby denied the opportunity to fully litigate his constitutional claims. Although the petitioner's claims are constitutionally based, we conclude that the trial court correctly construed and denied the petitioner's pleading as one for habeas corpus relief. Construing the pleading as one for post-conviction relief in the present case was not an option in this case. As noted, the petitioner has previously sought post-conviction relief and his petition was denied on the merits following a full hearing of the petitioner's claims. The petitioner is thus barred by the single-petition provision from attacking the same judgment in a second or subsequent post-conviction proceeding. *See* Tenn. Code Ann. § 40–30–102(c). In the alternative, the trial court correctly noted that the pleading fails to satisfy the mandatory requirements for seeking habeas corpus relief. *See* Tenn. Code Ann. §§ 29–21–107(b)(2), (3), (4). Moreover, the petitioner's claims of improper or unclear interpretations of law do not present cognizable claims for habeas corpus relief. As further noted, the petitioner has brought numerous previous post-conviction, habeas corpus and other manner of challenges to his convictions in which variations of the claims he presents here were rejected. We surmise that this led the petitioner to file the instant "untitled motion/petition" which we must conclude similarly avails him no relief. For each of these reasons, we conclude that the trial court properly dismissed the pleading

*Id*. at *2.

The plaintiff would have known the state court process afforded him no relief on his federal due process claim after the Tennessee Supreme Court denied his application for permission to appeal on January 30, 2006. *Id*. at *1. Assuming, then, that January 30, 2006 was the latest possible date on which the plaintiff would have learned for the first time that the state court process failed to provide him with any avenue of relief on his federal due process

claim, the plaintiff filed this action on July 30, 2017—far more than one year after January 30, 2006. The plaintiff's instant § 1983 action therefore still would be untimely filed.

Carter argues, however, that his § 1983 action is timely under the continuing violation doctrine. In actions brought under § 1983, the Sixth Circuit recognizes the continuing violation doctrine, which "allows the court to . . . consider as timely all relevant violations including those that would otherwise be time-barred." *Bruce v. Corr. Med. Servs., Inc*, 389 F. App'x 462, 466 (6th Cir. 2010) (citations and internal quotation marks omitted). "Under the continuing violation doctrine, a defendant's continuing wrongful conduct can extend the accrual of a plaintiff's cause of action." *Standridge v. Tenn. Dep't of Children's Servs.*, No. 3:08-CV-133, 2009 WL 348782, at *8 (E.D. Tenn. Feb. 10, 2009) (citing *Eidson v. State of Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 635 (6th Cir. 2007)). In determining whether the plaintiff's allegations constitute a "continuing violation," the court must conduct a three-part inquiry: "First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern . . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[] must have been avoidable if the defendant[] had at any time ceased in the wrongful conduct." *Tolbert v. State of Ohio Dep't. of Transp*., 172 F.3d 934, 940 (6th Cir.1999) (citing *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir.1997)).

As to the first prong of the continuing violation test, the plaintiff alleges wrongful conduct on the part of the defendant. The plaintiff identifies the wrongful conduct as the State's failure to reexamine the plaintiff's 1981 murder convictions based on the Tennessee Supreme Court's clarification in *Brown* of the terms "premeditation" and "deliberation." However, a reasonable person would have been put on notice of this alleged wrongful act no later than when

the Tennessee Supreme Court refused to allow the plaintiff to appeal the denial of his "Untitled Petition/Motion," in which he made the federal due process argument, which occurred more than one year prior to the filing of the plaintiff's instant complaint.

Yet, as the plaintiff describes it, "each day the State fails to reevaluate Carter's conviction is another instance of unlawful conduct, which is 'part of a continuous injury that [is] not simply a consequence of the [State's failure to evaluate].'" (Docket No. 11 at 27) (quoting *Remigio v. Kelly*, No. 04 CIV 1877JGKMDH, 2005 WL 1950138, at *19 (S.D. N.Y. Aug. 12, 2005)). In other words, the plaintiff counters that, because he is subject to the State's refusal to reexamine his convictions on a continuing basis, he has been injured anew every day, with each new injury triggering the accrual of a fresh cause of action. The plaintiff states that he has sought relief through the state corrective process by way of every available avenue of which he can surmise for years, culminating in his *Carter v. Slatery* filing, which proceeded to final determination on August 4, 2017. Essentially, the plaintiff argues that the denial of due process re-accrues each time he seeks relief from a Tennessee state court and is denied relief. He argues, "it is highly doubtful the district court would (or is even allowed to) entertain Carter's current *Slatery* complaint without Carter's repeated attempts to utilize every Tennessee procedure available." (Docket No. 11 at 25).

However, Carter is not required to "utilize every Tennessee procedure available" *time and time again*. After being denied relief on his untitled motion/petition in state court—in which he asserted that his murder convictions were obtained in violation of his constitutional rights to due process—Carter knew the State intended to afford him no relief on that theory. This court would not require, and in fact would not permit, a plaintiff to restart the accrual date for a § 1983 statute of limitations purposes each time he files a new motion or petition in the hope of

14

obtaining a different result. A "mere[] . . . reaffirmation" of a previous position is not enough to start a plaintiff's statute of limitations anew. *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996); *see Robinson v. Purkey*, No. 3:17-cv-01263, 2018 WL 2862772, at *33 (M.D. Tenn. June 11, 2018) ("The plaintiffs have identified no cases suggesting that, when a plaintiff is denied a hearing in violation of due process but the statute of limitations fully runs on her claim, she can state a new claim simply by obtaining a letter from the defendant confirming its position that no such hearing is due."). If the court allowed a plaintiff to effectively reset the accrual date for §1983 statute of limitations period each time he or she filed a new motion or a petition, the purpose of having a statute of limitations would be negated.

Furthermore, while inaction under certain circumstances might be sufficient to impose liability under § 1983 as the plaintiff argues (Docket No. 11 at 18-19), "mere inaction is not enough to satisfy the [continuing violation] doctrine." *Eidson*, 510 F.3d at 637 (finding that plaintiff's § 1983 allegations involving DCS agent's failure to conduct a thorough investigation and not informing the juvenile court of a witness's false testimony failed to establish a continuing due process violation); *Standridge*, 2009 WL 348782, at *8 (finding that plaintiff's § 1983 claims against agent were filed late, and agent's alleged failures to act and investigate did not constitute a continuing violation because "mere inaction is not enough" to satisfy the continuing violation doctrine).

Whether a party should be liable under § 1983 for failure to act or refusal to act is a separate and distinct analysis than whether a plaintiff is entitled to the benefit of the continuing violation doctrine. Thus, even though the plaintiff contends that "[t]he State's non-action constitutes a continuing violation under *Fiore* and Federal Due Process," (Docket No. 11 at 28), the court here cannot reach the merits of the plaintiff's federal claims because the plaintiff filed

15

his § 1983 complaint alleging such claims too late and, as this court understands it, the continuing violation doctrine does not work the way the plaintiff insists to save the plaintiff's untimely filed claims. While the plaintiff states that "[a]ll [he's] asking for . . . is an opportunity to have [his] convictions reevaluated under a proper interpretation of the law," (*Id.* at 31), the plaintiff fails to acknowledge that he has had the opportunity to present his arguments to the state *and* federal courts. The state courts have declined to grant the plaintiff relief, and the plaintiff has not filed his federal claims in a timely manner.[4]

The court commends the plaintiff for the accomplishments he has made while in prison over the past 37 years, including earning his GED, an associate's degree, and a bachelor's degree, and being only three courses short of a master's degree. (Docket No. 11 at 30-31). As the plaintiff concedes, the crime he committed on June 29, 1981 "was horrific, was senseless, and destroyed the lives of many many people . . . ." (*Id.* at 28). The plaintiff has had, and has utilized, many avenues in state and federal court to challenge his convictions and sentence. The relief he seeks is not available to him in this action.

## III. Conclusion

The plaintiff's motion for reconsideration, which the court construes as a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59 (Docket No. 11), will be granted, insofar as the court alters or amends its previous ruling (Docket Nos. 9 and 10) only for the purposes of conducting a new statute of limitations analysis of the plaintiff's § 1983 claims.

In reconsidering the plaintiff's federal claims brought under § 1983, the court finds that the claims are still subject to dismissal for having been filed beyond the statute of limitations, the

---

[4] It is also less than clear to this court, given the history of the plaintiff's litigation efforts, that the plaintiff's claims would not be barred by issue preclusion, had they been timely filed.

continuing violation doctrine does not apply, and the plaintiff's complaint therefore is subject to dismissal. Therefore, this case will be dismissed.

The plaintiff's motion for the appointment of counsel (Docket No. 12) and his application to proceed in forma pauperis (Docket No. 13) will be denied as moot.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge